## John F. Devine, Administrator, Appellee, v. Chicago, Burlington & Quincy Railway Company, Appellant.

### Gen. No. 16,523.

CONTRIBUTORY NEGLIGENCE—*standing by railroad track. Held,* under the evidence, that the plaintiff's intestate who was standing upon a railroad track waiting for the passing of a long heavy train was guilty of contributory negligence which barred a recovery in failing to look in the direction from which the train approached which struck and killed him, it appearing that the intestate's view was unobstructed and that the place where he was standing was one where trains were passing every half hour or hour throughout the day and that the intestate necessarily knew that fact.

Action in case. Appeal from the Superior Court of Cook county; the HON. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed with finding of facts. Opinion filed May 15, 1912.

JOSEPH A. CONNELL, for appellant; CHESTER M. DAWES, of counsel.

BERNARD P. BARASA, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

This action on the case was brought by Devine, ap-

pellee, as administrator, to recover damages sustained by the next of kin of Philip Matalone by reason of his death about March 20, 1907, while employed by the Chicago, Burlington & Quincy Railway Company on its tracks near Wyanet in Bureau County. In a three count declaration the first count charges that while employed on the tracks of appellant in fastening nuts at the end of a rail, and while he was moving off the track to avoid a west bound freight train, Matalone was struck and killed by another east bound locomotive and freight train of appellant through the negligence of the servants of appellant in charge of said east bound train. The second count and third counts charge that while Matalone was so engaged and so endeavoring to escape said west bound train, he was struck and killed by the east bound train through the negligence of the servants of appellant on the latter train in failing to give Matalone any warning of its approach. In all of said counts it is averred that Matalone was in the exercise of reasonable care for his safety at and just prior to his injury and that he was not a fellow servant of the servants through whose negligence it is alleged he was killed. The general issue and a special plea of the statute of limitations were pleaded by appellant, and on a jury trial of the issues joined, appellee recovered a judgment against appellant of $3,000.

In this appeal the railroad company challenges the correctness of the judgment upon the ground that it is not supported by the evidence, and insists that the court erred in refusing to direct a verdict of not guilty. The evidence discloses that Matalone came to this country from Italy about four years prior to his death; that he had had about seven months' experience as a track laborer, and had been working at and near the place of his injury with thirty or forty other men about ten days; that at or near the point where he was killed there was a curve in the road which con-

tained two main tracks known as the east bound and west bound tracks; that the road at this point has a decided grade about two or three miles in length, the decline in this grade being toward the east; and that the road bed at that point was about three or four feet above the level of the natural surface with a gradual slope down to a ditch, this grade extending west in a curve through a slight cut. Matalone was the farthest man west and was working on the west bound track, when a heavy freight train of about forty-five cars approached from Chicago westward up the grade there; and all the men, including Matalone, got off the track to let this train pass, nearly all of them, except Matalone, getting clear of the dump into the ditch on the north side of the road bed. Matalone and about three others got off the west bound track on to the east bound or south track, and he stood on the east bound track striking the cars of the west bound train with a stick or some other object in his hand as they passed him, all the while facing east and paying no attention to any danger that might approach from the west on the east bound track. While thus standing, another heavy freight train of forty or fifty cars approached him from the west on the east bound track and struck and killed him about the time the rear end of the first train was passing him. He never heard, apparently, or looked toward, the second train until it was almost on to him, and then he did not have time to avoid it. Three of the track laborers who were working about three hundred or more feet east of him, and who went down in the ditch on the north side of the road to avoid the first train, all swear that no bell or whistle was sounded by the east bound train until it was "right on top" of Matalone. None of these witnesses saw Matalone struck and could not do so because of the first train being between them and him at that time. The noise of the west bound train in pulling up the heavy grade there, and the ringing of the bell on

that train, and the further facts that these men never saw the east bound train until after Matalone was killed and knew nothing of its approach until the other train passed, may account for them not hearing or noticing any warnings the other train may have given the deceased. The noise of the passing of the first train and the two engines being both to the west of Matalone may have caused and no doubt did cause, the deceased, either to not hear or to not heed the warning signals of the train approaching him from the west. The fireman of the two trains and the engineer of the east bound train all testified that the two engines met west of the west end of the curve, one of them putting it at three or four car lengths west of the curve; and they must then have been about half the length of the trains, or about five hundred to nine hundred feet, west of Matalone. All of them swear the whistle was sounded on the east bound train then and again as it went into the curve. The engineer and fireman of the east bound train both testified that they saw the deceased when about 150 to 250 feet west of him, and could not see him earlier on account of the boiler extending back so far in the cab; and that again at that instant the engineer pulled down the whistle and held it down for one continuous blast until they struck him, and that the emergency brakes were applied and everything possible was done to stop the train, and to save the deceased; and that the bell was continuously rung from the time they met the other engine, the fireman of which had warned them by motions that men ahead were on the track.

It is also in evidence by the boss of the men that standing where Matalone was killed one could see a train approaching from the west for more than a quarter of a mile, if looking in that direction. He also testified that shortly before the accident he had warned the deceased to get clear off the tracks when any train approached, and not to stand on the track at all while one was passing, and that he replied, "All right, boss,

all right.'' Considering the further fact that trains were passing that point each way every half hour or hour throughout the day, and that the deceased necessarily must have known this, we must hold that his act of standing on the east bound track and facing east while a long heavy train was passing, and without looking or taking any precautions to protect himself from the train east bound, is conclusive evidence of contributory negligence on his part, and a bar to a recovery in this cause by appellee. It was incumbent on appellee to prove the allegation that the deceased was in the exercise of reasonable care for his own safety at and prior to his injury. The evidence wholly fails to furnish such proof.

The judgment of the lower court is, therefore, reversed, and we find as an ultimate fact, to be incorporated in the judgment of this court, that Matalone was not in the exercise of ordinary care for his own safety at and just before he was killed by the train of appellant.

*Judgment reversed with finding of facts.*